| | |
|---|---|
| Gregory S. Arovas, P.C. (*pro hac vice*) <br> KIRKLAND & ELLIS LLP <br> 601 Lexington Avenue <br> New York, NY 10022 <br> Telephone: (212) 446-4800 <br> Fax: (212) 446-4800 <br> Email: greg.arovas@kirkland.com | Gregory S. Gewirtz (*pro hac vice*) <br> LERNER, DAVID, LITTENBERG, <br> KRUMHOLZ & MENTLIK, LLP <br> 600 South Avenue West <br> Westfield, NJ 07090 <br> Telephone: (908) 654-5000 <br> Fax: (908) 654-7866 <br> Email: ggewirtz@ldlkm.com |

John C. O'Quinn (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (212) 446-4800
Fax: (212) 446-4800
Email: john.oquinn@kirkland.com

Brandon Brown (SBN 266347)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Fax: (415) 439-1400
Email: bhbrown@kirkland.com

*Attorneys for Respondents Sony Computer Entertainment America LLC & Sony Computer Entertainment Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IMMERSION CORPORATION, <br>   Petitioner, <br> v. <br> SONY COMPUTER ENTERTAINMENT AMERICA LLC and SONY COMPUTER ENTERTAINMENT INC., <br>   Respondents. | Case No. 5:16-cv-00857-RMW <br><br> **SONY'S REPLY IN SUPPORT OF ITS MOTION TO VACATE THE AWARD** <br><br> Date: April 1, 2016 <br> Time: 9:00 AM <br> Courtroom: 6 - 4th Floor <br> Judge: Honorable Ronald M. Whyte |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................... 2

    A. The Arbitrator's Exclusion of Invalidity Defenses, Without a Clear and Unambiguous Waiver, Violates Public Policy..........................................................2

        1. Immersion's Arguments Regarding Waiver of Sony's Invalidity Positions Are Meritless. ..............................................................................2

        2. Sony's Public Policy Challenge is Appropriate for the Facts Here. ............4

        3. The Absence of a "Clear and Unambiguous" Waiver is a Fatal Flaw in the Arbitrator's Ruling. ..................................................................5

        4. Immersion's Arguments Regarding *Commil* are Incorrect and Beside the Point. ...........................................................................................7

    B. The Arbitrator Refused to Consider Evidence of Prior Art that is Relevant to Determining Infringement Under Japanese Law. ..................................................8

        1. The FAA's Statutory Grounds for Vacating Awards Apply Here. ..............8

        2. The Approach Explicitly Stated by the Arbitrator is Fatally Flawed Under the FAA. .............................................................................................9

    C. The Arbitrator Failed to Determine How Many Units Satisfy the Predicate Requirement of Direct Infringement. ......................................................................11

        1. Royalties are Due Only for Products that Infringe Immersion Patents. ......................................................................................................11

        2. The Rulings Cited by Sony are the Arbitrator's Final Conclusions. .........12

        3. The Arbitrator Failed to Determine Extent of Direct Infringement...........13

        4. Sony Correctly Cited the Arbitrator's Rulings. .........................................14

    D. Immersion's Request for Attorneys' Fees is Baseless...........................................14

III. CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baseload Energy, Inc. v. Roberts*,
  619 F.3d 1357 (Fed. Cir. 2010)..................................................................................9, 10, 11

*California Pac. Med. Ctr. v. Serv. Emps. Int'l Union*,
  No. C 06 4685 SC, 2007 WL 81906 (N.D. Cal. Jan. 9, 2007)..........................................10, 11

*Comedy Club, Inc. v. Improv W. Associates*,
  553 F.3d 1277 (9th Cir. 2009) .............................................................................11, 13, 16, 18

*Commil, USA, LLC v. Cisco Sys., Inc.*,
  135 S.Ct. 1920 (2015)...............................................................................................9, 10

*Coutee v. Barington Captial Group*,
  L.P., 336 F.3d 1128 (9th Cir. 2003).......................................................................................18

*Flex-Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001).............................................................................................10

*Foster v. Hallco Mfg. Co.*,
  947 F.2d 469 (Fed. Cir. 1991)............................................................................................1, 8

*Gulf Coast Indus. Workers Union v. Exxon Co.*,
  USA, 991 F.2d 244 (5th Cir. 1993) ...................................................................................8, 11

*K.K. Ohno Seisakusho v. Fukui Kogyo K.K.*,
  2002 (Wa) 6035 (Tokyo D.Ct. Dec. 25, 2003) ......................................................................12

*LaPine v. Kyocera*,
  2008 WL 2168914 (N.D. Cal. May 23, 2008)..................................................................12, 16

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969)....................................................................................................1, 8, 11

*Matthews v. Nat'l Football League Mgmt. Council*,
  688 F.3d 1107 (9th Cir. 2012) ...............................................................................8, 9, 10, 11

*Nasalok Coating Corp. v. Nylok Corp.*,
  522 F.3d 1320 (Fed. Cir. 2008)...............................................................................................8

*Patten v. Signator Ins. Agency, Inc.*,
  441 F.3d 230 (1st Cir. 2006).................................................................................................11

*In re Van Dusen*,
  654 F.3d 838 (9th Cir. 2011) ...........................................................................................14, 15

*Westport Ins. Corp. v. N. California Relief*,
   76 F. Supp. 3d 869, 877 (N.D. Cal. 2014) ................................................................................11

**Statutes**

9 U.S.C. § 10(a)(3) ..........................................................................................................................11

9 U.S.C. § 10(a)(4) ....................................................................................................11, 12, 13, 15, 16

35 U.S.C. § 282 ................................................................................................................................1

35 U.S.C. § 282(b)(2) ..................................................................................................................9, 15

35 U.S.C. § 294 ................................................................................................................................1

35 U.S.C. § 294(b) ......................................................................................................................9, 15

I.     INTRODUCTION

The central points raised in Sony's motion to vacate the arbitration award are not countered by Immersion's opposition. Instead, Immersion seeks to confuse the issues with an array of meritless assertions of waiver before the arbitrator, baseless accusations of supposed mischaracterization, and other non-sequiturs. When it comes to addressing the substantive flaws in the award raised in Sony's motion, Immersion resorts to incorrect arguments that the arbitrator himself either declined to adopt or outright rejected. The arbitration award should be vacated.

**Exclusion of Sony's Invalidity Defense.**  Immersion does not dispute Sony's primary point that the parties' Agreement contains no "clear and unambiguous" exclusion of the right to raise invalidity in arbitration. Leaving aside Immersion's incorrect assertions of waiver, the substantive argument offered by Immersion is that "clear and unambiguous" language is not required because Sony is free to raise invalidity in forums other than arbitration. But the arbitrator stated that he "declines to comment" on this argument. (Dkt. No. 38, Ex. E, Order No. 3 at 12, n. 12.) In fact, Immersion is incorrect that Sony is "free" to raise invalidity in other forums—the Agreement states that if Sony raises invalidity in *any* forum other than arbitration, many of the licenses granted to Sony are subject to termination. The public policy favoring validity challenges does not permit Immersion to force this Hobson's choice upon Sony.

Further, Immersion's position is contradicted by *Flex-Foot*, where the Federal Circuit addressed the appropriateness of excluding invalidity defenses from arbitration. Instead of adopting Immersion's position that no public policy concern is raised by excluding invalidity from arbitration, the Federal Circuit carefully analyzed *Lear* and concluded that invalidity could be excluded only via "clear and unambiguous" language. Sony simply requests that this Court apply the same analysis used by the Federal Circuit in *Flex-Foot*.

**Refusal to Consider Evidence Relevant to Infringement.**  Immersion does not dispute Sony's position that excluding invalidity (even if warranted) provides no basis for the arbitrator to refuse to consider evidence of prior art that is relevant to determining infringement under Japanese law. Immersion seeks to pretend that this is not what the arbitrator did, but it is exactly what the arbitrator said in the Interim Final Award. In particular, the arbitrator "decline[d] to

give weight to Sony's evidence and argument that infringement is precluded by prior art" notwithstanding that "such an inquiry might be appropriate in an infringement litigation before a court in Japan." (Dkt. No. 38, Ex. B, Interim Final Award at 8, n. 2).  This issue was never revisited in any later rulings and there is no basis for conjecture that the arbitrator somehow reversed course and secretly conducted an analysis of Sony's prior art evidence.

**Failure to Determine Extent of Direct Infringement.**  Immersion does not dispute that the arbitrator never determined how many accused DualShock®4 controllers are subject to direct infringement.  Nor does Immersion dispute that direct infringement occurs only when consumers separately buy additional items and configure a multi-controller system.  Leaving aside Immersion's attempts at distraction, its substantive position is that Japanese law does not require proof of direct infringement—merely knowledge that some small subset of the accused products can be configured to directly infringe.  But this is the opposite of what the arbitrator ruled:  "a patentee must prove that a component is used to directly infringe the patent before liability can be imposed on the producer of the component."  (Dkt. No. 38, Ex. C, Final Award at 18.)

Under the correct legal standard, as recognized by the arbitrator, indirect infringement by Sony cannot be shown without proof that the accused products are subject to direct infringement by consumers.  The arbitrator's failure to determine the extent of direct infringement is a fatal defect in his ruling that all accused controllers are royalty bearing due to indirect infringement.

## II. ARGUMENT

### A. The Arbitrator's Exclusion of Invalidity Defenses, Without a Clear and Unambiguous Waiver, Violates Public Policy.

Immersion's opposition does not dispute the linchpin of Sony's position—that there is no "clear and unambiguous" waiver of invalidity in the parties' Agreement.  Instead, Immersion asserts that Sony waived this position and that a "clear and unambiguous" waiver is not required.  As explained below, Immersion's assertions are incorrect.  Thus, the absence of a "clear and unambiguous" waiver of invalidity is a fatal defect in the arbitrator's award.

#### 1. Immersion's Arguments Regarding Waiver of Sony's Invalidity Positions Are Meritless.

As an initial matter, Immersion is incorrect that Sony's position regarding its right to

raise invalidity defenses should be swept aside based on alleged waiver before the arbitrator. (Dkt. No. 45, Immersion Opp. at 12.) Sony raised before the arbitrator the very same position it is raising now. Specifically, Sony explained to the arbitrator that a "clear and unambiguous" waiver is required to exclude invalidity defenses:

> Any arrangement contrary to the common understanding that only valid patent claims provide a basis for the obligation to pay royalties or infringement damages should be stated in the most explicit language. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1362 (Fed. Cir. 2010) ("[I]nvalidity and unenforceability claims may be released, but only if the language of the agreement or consent decree is clear and unambiguous.")

(Dkt. No. 45, Ex. 4, Sony Br. re Invalidity at 3.) Sony also explained that the lack of any "clear and unambiguous" waiver of invalidity in the parties' Agreement is compounded by the "common understanding that only valid patent claims provide a basis for the obligation to pay royalties." (*Id.*) These are the same points raised in Sony's motion to vacate.

Immersion's assertion that Sony should have labeled its arguments to the arbitrator as a "public policy" challenge is also incorrect. (Dkt. No. 45, Immersion Opp. at 12.) Sony relies on "public policy" as the grounds (recognized by the New York Convention and Ninth Circuit law) under which the arbitration award may be challenged before this Court. (Dkt. No. 38, Sony Mot. at 12.) In other words, violation of "public policy" by the arbitrator's ruling is the reason review is warranted by this Court. The issue before the arbitrator was how to interpret the contract for purposes of entering an award—not whether an award (that did not yet exist) should be vacated. In any event, Sony raised the same substantive point it is raising now—that the Agreement cannot be interpreted to exclude invalidity absent a "clear and unambiguous" waiver.

Nor is there any merit to Immersion's complaint that Sony cites additional legal authority in its motion. (Dkt. No. 45, Immersion Opp. at 12.) For example, Immersion complains about Sony's citation of *Commil* for the proposition that an invalid patent cannot be infringed. (*Id.*) But Immersion ignores Sony's explanation to the arbitrator of this very same "common understanding," as quoted above. (Dkt. No. 45, Ex. 4, Sony Br. re Invalidity at 3.) There is also no basis for Immersion's complaints about Sony's citation of *Lear*, given that Sony previously relied on *Baseload*, which cites and discusses *Lear* for the same substantive point at issue. (*Id.*)

Finally, Immersion's assertion that Sony abandoned invalidity is false. (Dkt. No. 45, Immersion Opp. at 6-7, 10.) In Order No. 3, the arbitrator ordered Sony to strike its invalidity defenses. (Dkt. No. 38, Ex. E, Order No. 3 at 13.) From that point forward, Sony was not permitted to assert invalidity, but instead attempted to offer evidence of prior art to establish that: i) the accused products are not "indispensable" and ii) good faith belief of non-infringement or invalidity negates "knowledge." In the first passage quoted by Immersion, Sony explained that evidence of prior art was being offered to show non-infringement under Japanese law, regardless of invalidity. (Dkt. No. 45, Ex. 53, 5/19/15 Tr. at 94:6-12.) In the second passage, Sony stated that it would withdraw its position that "knowledge" was negated by a good faith belief of non-infringement or invalidity—but never withdrew its substantive invalidity position. (Dkt. No. 45, Ex. 54, 5/20/15 Tr. at 510:3–511:5.) In any event, Sony consistently made clear it was refraining from asserting invalidity only because of the arbitrator's earlier ruling, which Sony contested:

> But Sony has identified invalidity. We wanted invalidity to be part of this case. We pleaded for it. We thought it was appropriate. Judge, you ruled against it. We accept that for ruling that the patent is invalid.

(Dkt. No. 45, Ex. 53, 5/19/15 Tr. at 73:17-24.) Immersion's attempt to fabricate an alleged abandonment by Sony of its invalidity defenses is baseless.

### 2.   Sony's Public Policy Challenge is Appropriate for the Facts Here.

Immersion next asserts that the award cannot be vacated on public policy grounds because the arbitrator had authority to decide if validity defenses are within the scope of arbitration. (Dkt. No. 45, Immersion Opp. at 12-14.) There is no dispute that the arbitrator had authority to decide this issue, which was specifically tendered by the parties. But this does not insulate the award from being vacated due to a violation of public policy. Indeed, the only decisions for which a public policy challenge is relevant are those that the arbitrator otherwise had authority to make (*unauthorized* decisions are subject to separate challenges under Article V.1.(c) of the Convention and Section 10(a)(4) of the FAA).

Nor is Immersion correct that the award cannot be vacated due to general policy interests in promoting finality of arbitration. (*Id.* at 12-13.) If this were true, it would never be possible to vacate an award on public policy grounds. Rather, there is no general policy interest in

promoting finality of arbitration decisions that violate other important public policy objectives.

Moreover, suitability of the points at issue here for a public policy challenge is confirmed by the Federal Circuit's analysis in *Flex-Foot*. As explained below, *Flex-Foot* considered whether exclusion of invalidity defenses *from arbitration* was contrary to the public policy against restricting invalidity challenges—and allowed such an exclusion *only* via "clear and unambiguous" language. *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1370 (Fed. Cir. 2001).

Finally, a public policy challenge is not only appropriate here, but calls for *de novo* review of the arbitrator's conclusions, as explained in Sony's motion. (Dkt. No. 38, Sony Mot. at 12). Immersion's assertion that the cases cited by Sony for this proposition involved the Labor Management Relations Act and collective bargaining is irrelevant to standard of review. (Dkt. No. 45, Immersion Opp. at 4.) In any event, this same rule has been recognized in other contexts as well. *PaineWebber, Inc. v. Agron,* 49 F.3d 347, 350 (8th Cir. 1995) (holding, in a case involving compliance with NASD rules, that "we accept the facts found by the arbitration panel, but review its conclusions de novo to determine if they violate public policy").

### 3. The Absence of a "Clear and Unambiguous" Waiver is a Fatal Flaw in the Arbitrator's Ruling.

Moving to the substance of the dispute, Sony's motion explained that public policy is violated by exclusion of invalidity without a "clear and unambiguous" waiver. (Dkt. No. 38, Sony Mot. at 12-13.) Immersion does not dispute that the arbitrator never found a "clear and unambiguous" waiver of invalidity. Instead, Immersion argues that *Flex-Foot* and *Baseload*, which require such a waiver, "have no relevance" to excluding invalidity from arbitration. (Dkt. No. 45, Immersion Opp. at 15-16.) This is incorrect and contradicted by *Flex-Foot*.

Immersion argues *Flex-Foot* and *Baseload* are not applicable because Sony allegedly is "free to challenge the validity of Immersion's patent outside of arbitration." (*Id.* at 16.) But this ignores the fact that Section 9.17, on which Immersion relies, is a ***termination*** provision. This Section states that any attempt by Sony to assert invalidity in other forums (besides arbitration) triggers an unconditional right for Immersion to terminate the licenses granted to Sony under Section 2. (Dkt. No. 38, Ex. A, 2007 Agreement, ¶ 9.17.) Asserting invalidity in Japanese

administrative proceedings, as Immersion proposes, would trigger the consequences stated in Section 9.17.  If Sony is not permitted to raise invalidity as a defense in arbitration, it is then put to the Hobson's choice of abandoning invalidity altogether or renouncing important contractual benefits that it has already paid for.  This directly implicates the public policy concerns addressed by *Lear* and its progeny.  *Canon, Inc. v. Tesseron Ltd.,* No. 14cv5462 (DLC), 2015 WL 3884220 at *4-5 (S.D.N.Y June 24, 2015) (citing *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2407 (2015), for proposition that "restrictions of challenges to patent validity, 'whether or not authorized by express contract, would impermissibly undermine the patent laws").

In particular, the contract in *Canon* allowed the licensor to "immediately terminate this Agreement" if the licensee "contests the validity of any of the Licensed Patents." *Id.* at *2.  The court explained that "[w]hether framed as a licensor's right to terminate a license or the licensee's penalty for challenging the patent" such a poison-pill provision "operates to discourage licensees from doing anything that threatens [Immersion's patent] monopoly. *Id.* at *4.  "The logic of *Lear* does not require explicit bans" . . . [n]or does it require case-by-case fact-finding to determine the extent to which a license or contract has left a party with an incentive to challenge a patent monopoly." *Id.* at *5.  Contractual consequences for challenging validity "operate to muzzle parties and discourage them from challenging patents" and thus implicate the public policy raised in *Lear*.  For these reasons, interpreting the Agreement to exclude invalidity from arbitration—the forum left open by the Agreement for resolving such issues—is no better than eliminating invalidity entirely and thus requires "clear and unambiguous" language.

Additionally, contrary to Immersion's assertions, Judge Ware never endorsed its argument that no "clear and unambiguous" waiver is required because Sony is allegedly free to challenge validity in other forums.  (Dkt. No. 45, Immersion Opp. at 16.)  In fact, Judge Ware explicitly declined to address this contention:

> Immersion contends that the Sony Entities may challenge or dispute the validity or enforceability of any of the Immersion Patents in any judicial or administrative proceeding.  The Arbitrator **declines to comment** on the accuracy of this contention.

(Dkt. No. 38, Ex. E, Order No. 3 at 12, n. 12) (emphasis added.)

Moreover, the point at issue here—excluding invalidity from arbitration—is exactly what the Federal Circuit addressed in *Flex-Foot*. In an arbitration regarding alleged infringement, the arbitrator had excluded invalidity from the scope of arbitration based on a contract between the parties. *Flex-Foot,* 238 F.3d at 1367. The Federal Circuit analyzed whether this exclusion of invalidity defenses from arbitration violated the public policy stated in *Lear*. *Id.* at 1367-68. Here too, Sony challenges arbitrator's exclusion of invalidity based upon his interpretation of the parties' Agreement and seeks review under the relevant public policy principles.

Notably, *Flex-Foot **did not*** conclude that public policy was irrelevant to whether invalidity could be excluded from arbitration—as Immersion urges this Court to conclude. Instead, the Federal Circuit did the opposite of what Immersion urges. *Flex-Foot* carefully weighed the public policy concerns under *Lear* that are implicated by excluding invalidity. *Id.* at 1367-70. The Federal Circuit concluded that invalidity could be excluded from the arbitration in that case ***only*** via "clear and unambiguous" language. *Id.* at 1370; *see also Baseload Energy, Inc. v. Roberts,* 619 F.3d 1357, 1362 (Fed. Cir. 2010) (invalidity can be waived "only if the language of the agreement or consent decree is clear and unambiguous"). On this basis, the Federal Circuit upheld exclusion of invalidity ***only*** after finding a "clear and unambiguous" waiver. *Flex-Foot,* 238 F.3d at 1370. Sony simply asks this Court to follow the same approach.

### 4. Immersion's Assertions About *Commil* are Incorrect and Irrelevant.

Under the correct legal framework, as set forth above, the arbitrator's exclusion of invalidity violates public policy because there is no "clear and unambiguous" waiver. In this regard, Immersion's attacks upon Sony's citation of the Supreme Court's *Commil* decision are incorrect and beside the point. (Dkt. No. 45, Immersion Opp. at 14-15.) There is no dispute that *Commil* said exactly what Sony quotes: "To say that an invalid patent cannot be infringed . . . is in one sense a simple truth, both as a matter of logic and semantics." *Commil USA, LLC v. Cisco Sys., Inc.,* 135 S.Ct. 1920, 1929 (2015). This supports Sony's position that, as a matter of contractual interpretation, a dispute as to whether Sony is liable to pay royalties for alleged infringement of an Immersion patent should be understood to include within its scope consideration of Sony's invalidity defenses for that same patent. (Dkt. No. 38, Sony Mot. at 13.)

1  The holding of *Commil* that, notwithstanding the axiom quoted above, **knowledge** of infringement is not negated by a good faith (but erroneous) belief of invalidity, is not relevant to the contractual provisions at issue here.  Sony is not challenging any decisions by the arbitrator regarding good faith belief of invalidity or knowledge of infringement.  Nor is Sony asserting that non-infringement and invalidity are somehow exactly the same in every possible context.  Sony's point that invalidity is a necessary defense to infringement liability, and is not waived by the contractual language at issue here, is fully consistent with *Commil's* holding and reasoning.

In any event, the bottom line is that there is no "clear and unambiguous" waiver of invalidity in the parties' Agreement.  Even if there was room for reasonable debate as to whether *Commil* supports Sony's position or as to whether the language of the arbitration provision in the Agreement should be understood to encompass invalidity defenses, this would be beside the point.  Reasonable debate is not a ***clear and unambiguous*** waiver.  Because there is no clear and unambiguous waiver of invalidity, the arbitrator's exclusion of Sony's invalidity defense violates public policy and thus requires that the award be vacated.

      **B.**      **The Arbitrator Refused to Consider Evidence of Prior Art that is Relevant to Determining Infringement Under Japanese Law.**

Immersion does not dispute Sony's position that the arbitrator's ruling in Order No. 3 (excluding invalidity defenses) provides no basis for refusing to consider evidence of prior art that is relevant to determining infringement under Japanese law.  Instead, Immersion attempts to sidestep the arbitrator's explicit adoption of this indefensible reasoning (in the Interim Final Award) with unsupported conjecture that the Final Award somehow engaged in an unstated analysis of the relevant evidence.  The award should be vacated because the arbitrator's explicitly-stated approach runs afoul of the applicable provisions of the Federal Arbitration Act.

      **1.**      **The FAA's Statutory Grounds for Vacating Awards Apply Here.**

As an initial matter, Immersion is incorrect that the New York Convention precludes challenges on grounds provided in the Federal Arbitration Act. (Dkt. No. 45, Immersion Opp. at 16-17.)  Article V(1)(e) of the Convention allows an award to be "set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

(Dkt. No. 38, Ex. N, New York Convention, Art. V(1)(e).)  Thus, "[t]he [New York] Convention specifically contemplates that the state in which . . . the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief."  *Zurich Am. Ins. Co. v. Team Tankers A.S.,* 811 F.3d 584, 588 (2d Cir. 2016), *quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir. 1997).  This approach has been consistently adopted in numerous Circuits.  *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.,* 703 F.3d 742, 748 (5th Cir. 2012); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account,* 618 F.3d 277, 291 (3d Cir. 2010); *TermoRio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 937 (D.C. Cir. 2007); *Jacada (Europe), Ltd. v. Int'l Marketing Strategies, Inc.,* 401 F.3d 701, 704-709 (6th Cir. 2005). Indeed, the Northern District of California has adopted the prevailing rule that, for arbitrations conducted in the U.S., "the appropriate standard of review is under both Article V and 9 U.S.C. section 10."  *LaPine v. Kyocera Corp.,* 2008 WL 2168914, *6 (N.D. Cal. May 23, 2008).

In this case, the arbitration was conducted in San Francisco.  The award is therefore subject to challenge under the FAA, including for failure to consider evidence "pertinent and material to the controversy" under Section 10(a)(3) and for manifest disregard of law under Section 10(a)(4).  *Id.*  Immersion's attempt to avoid these provisions of the FAA is meritless.[1]

### 2. The Approach Explicitly Stated by the Arbitrator is Fatally Flawed Under the FAA.

Immersion does not dispute that the arbitrator's ruling in Order No. 3 (excluding invalidity defenses) provides no basis for refusing to consider evidence of prior art that is relevant to determining infringement under Japanese law.  As previously explained in Sony's motion, this is exactly what the arbitrator did:

> The Arbitrator declines to give weight to Sony's evidence and argument that infringement is precluded by prior art. The Arbitrator regards this as tantamount

---

[1] The cases cited by Immersion do not counter the well-established rule that awards resulting from arbitration conducted in the U.S. are subject to challenge under the FAA.  (Dkt. No. 45, Immersion Opp. at 16-17.)  In *M & C Corporation*, the New York Convention was found to be the exclusive authority only because the arbitration was neither conducted in the U.S. nor under U.S. law.  *China National Metal Products* similarly addressed an arbitration conducted in China.  *Industrial Risk Insurers* did not address Article V(e)(1) of the Convention. Finally, *Yusuf Ahmed Alghanim & Sons* contradicts Immersion's position, as noted above.

> to an affirmative defense that the '301 Patent is not novel. While such an inquiry might be appropriate in an infringement litigation before a court in Japan, as previously ruled, the Agreement limits the scope of arbitration to infringement and provided alternative procedures if a party wishes to challenge the validity of an asserted patent.

(Dkt. No. 38, Ex. B, Interim Final Award at 8, n. 2.)  Immersion makes no attempt to defend this reasoning because it simply cannot be defended.

Instead, Immersion attempts to brush aside the arbitrator's explicit adoption of this indefensible position by asserting that it appears in the Interim Final Award.  (Dkt. No. 45, Immersion Opp. at 17-18.)  But this issue was never revisited by the arbitrator in any later rulings.  Although the arbitrator did reverse course on other issues in the Final Award, he made no further mention of Sony's evidence of prior art relevant to determining infringement.  It is therefore quite clear that the arbitrator maintained his explicitly stated refusal to consider Sony's prior art evidence.  Immersion's insistence that the arbitrator "considered Sony's evidence"—after explicitly refusing to do so and then making no further mention of this evidence—is based upon nothing more than Immersion's own imagination.  (*Id.* at 18.)

Nor is Immersion correct that the arbitrator's discussion in the Final Award of the "indispensable" element somehow undercuts Sony's position.  (*Id.* at 18-19.)  To the contrary, the arbitrator's analysis of whether the accused products are "indispensable" to the problem solved by the JP '301 patent (which applies the same legal framework in both the Interim Final Award and Final Award) conspicuously omits *any* mention of the prior art.  This further confirms the arbitrator's adherence to his explicitly stated refusal to consider the prior art.

Further, no basis exists for Immersion's insistence that the arbitrator is assumed to have considered Sony's evidence of prior art because this evidence was presented in expert reports, briefs, and testimony.  (*Id.* at 19.)  After Sony attempted to present this evidence, the arbitrator explicitly stated that he would ***not*** consider it.  (Dkt. No. 38, Ex. B, Interim Final Award at 8, n. 2.)  Immersion's conjecture is directly refuted by the arbitrator's own statement.

Immersion's (somewhat inconsistent) assertion that Sony directed the arbitrator not to consider the voluminous evidence regarding the prior art is also incorrect.  (*Id.* at 10.)  As explained earlier, Sony withdrew only its assertion that ***good faith belief*** of non-infringement or

invalidity negates the "knowledge" element of indirect infringement. Sony never withdrew its assertion that prior art is relevant to the separate issue of determining infringement of the "indispensable" element of indirect infringement. To the contrary, Sony specifically maintained its objection to the arbitrator's disregard of prior art evidence relating to the "indispensable" element in the briefing immediately preceding the Final Award. (Dkt. No. 38, Ex. I at 8-11.)

Finally, Immersion is incorrect that the arbitrator's indefensible refusal to consider Sony's evidence is merely an error of law. The hallmark of a "manifest disregard of law," as opposed to an error of law, is that the arbitrator "recognized the applicable law and then ignored it." *Comedy Club, Inc. v. Improv W. Associates,* 553 F.3d 1277, 1290 (9th Cir. 2009). Here, the arbitrator recognized that prior art "might be appropriate in an infringement litigation before a court in Japan." (Dkt. No. 38, Ex. B, Interim Final Award at 8, n. 2.) Despite recognizing the legal relevance of Sony's evidence, the arbitrator reasoned that his earlier exclusion of invalidity defenses barred consideration of prior art evidence. (*Id.*) This reasoning—which Immersion does not even attempt to justify or rationalize—is a manifest disregard of the arbitrator's own recognition of the relevance of Sony's evidence to determining infringement under Japanese law.

### C. The Arbitrator Failed to Determine How Many Units Satisfy the Predicate Requirement of Direct Infringement.

Immersion does not dispute Sony's position that the arbitrator failed to determine the extent to which the accused DualShock®4 controllers are subject to alleged direct infringement. Instead, Immersion offers a confusing jumble of assertions regarding alleged mischaracterization of the record by Sony. These assertions are meritless and contradicted by the arbitrator's own explicit rulings that showing indirect infringement under Japanese law requires proof of acts of direct infringement. The arbitrator's disregard of the need to determine how many accused products are subject to such acts of direct infringement is a manifest disregard of the law.[2]

#### 1. Royalties are Due Only for Products that Infringe Immersion Patents.

Immersion begins by asserting an alleged distinction between determining whether

---

[2] As explained in Section II.B.1. above, the award is subject to challenge on the grounds stated in the FAA. This includes manifest disregard of law, under Section 10(a)(4). *Comedy Club,* 553 F.3d at 1290; *LaPine v. Kyocera,* 2008 WL 2168914, *6.

particular controllers are a "Royalty-Bearing Product" under the Agreement versus determining whether Sony is liable for royalties on such controllers. (Dkt. No. 45, Immersion Mot. at 20.) This supposed distinction is meaningless and beside the point.

The Agreement states that Sony is liable to pay royalties for each unit determined to be a "Royalty-Bearing Product." (Dkt. No. 38, Ex. A, 2007 Agreement, ¶ 5.4(b).) As the arbitrator correctly ruled, an accused product is a Royalty-Bearing Product only if it "*infringes* an Immersion patent." (Dkt. No. 38, Ex. C, Final Award at 9.) Thus, the threshold question for determining if any given controller is subject to royalty payments (as a Royalty-Bearing Product) is whether *that unit* is used to infringe an Immersion patent. Sony's challenge to the award is based upon the arbitrator's failure to answer this question under the relevant law.

### 2. The Rulings Cited by Sony are the Arbitrator's Final Conclusions.

Immersion's next argument attempts to further confuse the issues with a vague accusation that Sony "casually intermingles" citations to the arbitrator's Interim Final Award. (Dkt. No. 45, Immersion Mot. at 20-21.) Tellingly, Immersion fails to identify any specific proposition cited by Sony that was allegedly not maintained in the Final Award. No such proposition exists.

Sony relies upon the Interim Final Award for the propositions that: i) direct infringement requires "a product *necessarily* comprising a plurality of vibrotactile units" (*i.e.*, a system with multiple controllers), and ii) Sony does not directly infringe because no products sold by Sony satisfy this requirement. (Dkt. No. 38, Sony Mot. at 18.) Contrary to Immersion's insinuations, these rulings were *explicitly incorporated* into the Final Award: "In the interim award, the Arbitrator analyzed whether the DS4 Wireless Controller directly infringed the '301 Patent. . . . That analysis and finding are reaffirmed and incorporated by reference into this Final Award." (Dkt. No. 38, Ex. C, Final Award at 11.) Sony's remaining citations to the Interim Final Award merely reinforce the requirement of proof of direct infringement—*i.e.,* configuration of a system for multi-controller operation—as a predicate for indirect infringement. This was also expressly adopted in the Final Award: "a patentee must prove that a component is used to directly infringe the patent before liability can be imposed on the producer of the component." (*Id.* at 18.)

### 3. The Arbitrator Failed to Determine Extent of Direct Infringement.

With regard to the substance, Immersion does not dispute Sony's fundamental point that the arbitrator failed to determine how many accused DualShock®4 controllers are subject to direct infringement. Instead, Immersion argues that "it does not matter" under Japanese law regarding indirect infringement whether any particular product is actually subject to direct infringement. (Dkt. No. 45 at 21.) But this is the opposite of the arbitrator's rulings.

As explained in Sony's motion, the arbitrator explicitly ruled in the Final Award that, under the relevant Japanese law, "a patentee must prove that a component is used to directly infringe the patent before liability can be imposed on the producer of the component." (Dkt. No. 38, Ex. C, Final Award at 18.) And he reiterated that "liability for indirect infringement (commercial production of component) is premised on a finding of direct infringement ('… used to work the patented invention.')" (*Id.* at 22.) These rulings contradict Immersion's present assertion that Japanese law requires only "knowledge" that direct infringement occurs with some small subset of products. (Dkt. No. 45 at 21.) Contrary to Immersion's assertion, the arbitrator required that "*a* component is *used to directly infringe*" before indirect infringement can be found for "*the* component" and that indirect infringement is "premised on a *finding* of *direct infringement*." (Dkt. No. 38, Ex. C, Final Award at 18, 22) (emphasis added.)[3] This matches the well-established requirement of U.S. law for indirect infringement.

Tellingly, the only support offered by Immersion for its argument that Japanese law does not require proof of direct infringement by particular products is a citation to a completely different issue. (Dkt. No. 45 at 21.) Immersion cites the arbitrator's rulings that "knowledge" can be found "even if the component has uses that do not infringe the patent" and that Japanese law "does not absolve a component maker from liability if the component can be used in a non-infringing manner." (*Id.* at 21-22.) But Sony does not contend that Immersion must show an absence of non-infringing uses. Rather, as explained above, Sony relies upon the arbitrator's ruling that (regardless of whether non-infringing uses exist) there must be proof that the accused

---

[3] In fact, the arbitrator stated during closing arguments that the extent of infringement would need to be determined "at a later proceeding," in the event infringement was found. (Dkt. No. 38, Ex. M, 6/10/15 Tr. at 154:10-155:5.) No such proceeding was ever made available.

products were configured in a way that directly infringes, whether or not they *also* had non-infringing uses. The statements cited by Immersion are completely unrelated to this requirement.

### 4. Sony Correctly Cited the Arbitrator's Rulings.

Finally, Immersion's various accusations that Sony is somehow mischaracterizing the facts are baseless. (Dkt. No. 45, Immersion Mot. at 22.) Immersion argues that Sony allegedly mischaracterizes that direct infringement requires a system configured for multi-controller operation. (*Id.*) As explained above, however, this requirement was explicitly adopted in the Interim Final Award and then incorporated into the Final Award. Nor does Immersion even offer any suggestion that direct infringement can occur without a multi-controller system.

Immersion further asserts that Sony omits the arbitrator's statement that "Immersion proved that the DS4 Wireless Controller is used by consumers to work the '301 patent." (*Id.*) That is also untrue. Sony explained that this generalized observation fails to answer the question of *how many* controllers are configured to directly infringe. (Dkt. No. 38, Sony Mot. at 19-20.) Indeed, Immersion does not dispute that the arbitrator never determined how many DualShock®4 controllers are actually configured for direct infringement. Under the legal standard recognized by the arbitrator in the Final Award—that indirect infringement requires predicate acts of direct infringement—this key point requires that the award be vacated as a manifest disregard of law.

### D. Immersion's Request for Attorneys' Fees is Baseless.

Immersion's fee request is meritless because Sony has raised meritorious arguments for vacating the award under well-recognized statutory grounds: i) violation of public policy under Article V.2.(a) of the Convention, ii) refusal to hear evidence under Section 10(a)(3) of the FAA, and iii) manifest disregard of the law under under Section 10(a)(4) of the FAA (as interpreted by the Ninth Circuit). Even if this Court does not accept Sony's positions, there is nothing approaching the bad faith or vexatious conduct required to depart from the "American rule" that each party bears its own fees. *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Nor does Immersion's single-paragraph fee request offer any meaningful argument that this extremely high standard is satisfied here.[4]

---

[4] Both cases cited by Immersion address "an unjustified refusal to abide by an arbitrator's award" (as opposed to moving to vacate). *Int'l Union,* 707 F.2d at 428-29; *Ministry of Def.*

Indeed, the merit of Sony's motion to vacate is shown by Immersion's repeated need to misstate the record or Sony's positions before the arbitrator, as detailed earlier. For example:

**Exclusion of Sony's Invalidity Defense**

- Immersion insists Sony waived its arguments, but ignores Sony's explicit argument to the arbitrator that *Baseload* requires a "clear and unambiguous" waiver of invalidity;
- Immersion incorrectly asserts Sony waived invalidity based on statements regarding a different issue (good faith belief of non-infringement or invalidity to negate knowledge).

**Refusal to Consider Evidence Relevant to Infringement**

- Immersion ignores precedent of Northern District of California and several Circuit Courts that the Convention allows domestic awards to be vacated on grounds stated in the FAA;
- Immersion urges the Court to disregard statements in the Interim Final Award indicating refusal to consider evidence of prior art, which were never revisited in any later rulings.

**Failure to Determine Extend of Direct Infringement**

- Immersion urges the Court to disregard rulings in the Interim Final Award on scope of the claims and direct infringement, despite explicit incorporation into the Final Award;
- Immersion attempts to recast the arbitrator's ruling on availability of non-infringing uses as stating direct infringement need not be proven, when the arbitrator held the opposite.

### III.  CONCLUSION

For Sony respectfully requests that the Court vacate the Final Award and Order No. 3.

Dated:  March 30, 2016                                   Respectfully Submitted,

By: */s/ Brandon Brown*  
Brandon Brown (SBN 266347)  
KIRKLAND & ELLIS LLP  
555 California Street  
San Francisco, CA 94104  
Telephone: (415) 439-1400  
Fax: (415) 439-1500  
Email: bhbrown@kirkland.com

---

& *Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1104 (9th Cir. 2011). Sony has done nothing of the sort.

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2016, a true and correct copy of the foregoing **SONY'S REPLY IN SUPPORT OF ITS MOTION TO VACATE THE AWARD** was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered for service.

Dated: March 30, 2016

By: */s/ Brandon Brown*
Brandon Brown (SBN 266347)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Fax: (415) 439-1500
Email: bhbrown@kirkland.com

*Attorney for Respondents Sony Computer Entertainment America LLC & Sony Computer Entertainment Inc.*

CERTIFICATE OF SERVICE
CASE NO. 5:16-CV-00857-RMW